UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CATHERINE DUHIGG,

       Plaintiff,   **COMPLAINT**

v.   05 CV 3689 (LTW) (GWG)
   ECF CASE
VICTORIA'S SECRET STORES, INC., and
LIMITEDBRANDS-VICTORIA'S SECRET,

       Defendants.
------------------------------------------------------------------x

      Plaintiff, CATHERINE DUHIGG, complaining of defendants, alleges as follows:

<u>Nature of the Case</u>

    1.    From in or about July 10, 2000 until July 20, 2004, plaintiff was employed by defendant VICTORIA'S SECRET STORES, INC., A/K/A LIMITEDBRANDS-VICTORIA'S SECRET ("defendants") as a Co-Director of a number of different stores operated by defendants in Manhattan, and always performed her job in a satisfactory manner.

    2.    Beginning in the summer of 2003, plaintiff began getting written warnings from her supervisor, Wilney Francois, female, age 27, which contained untrue allegations concerning plaintiff's work performance. Francois' harassment of plaintiff culminated in Francois telling plaintiff that she should "resign from the company" and go back to her former employer, Daffy's Department Store.

    3.    Defendants were aware that plaintiff suffers from a psychiatric conditions known as "high anxiety and nervousness" which are considered disabilities under the New York Human Rights Law.

4.	Francois, being aware of plaintiff's disabling conditions, engaged in a course of conduct that was designed to cause plaintiff to suffer an anxiety attack and to render her unable to work.

5.	Plaintiff in fact suffered an anxiety attack as a result of Francois' hostile conduct towards her.

6.	In or about April, 2004, as a result of plaintiff's complaints to defendants, plaintiff was transferred from their Herald Square store to their store located at 32 East 57th Street.

7.	During the period she worked at the 57th Street store, all of plaintiff's supervisory responsibilities were taken away from her.

8.	On or about June 29, 2004, plaintiff was informed by defendants' General Manager David Harrati, that she would be terminated effective July 31, 2004 unless she resigned.

9.	As a result of the foregoing acts of discrimination, plaintiff filed a complaint with the New York State Division of Human Rights and charge with the federal Equal Employment Opportunity Commission alleging that she was the victim of unlawful discrimination on the basis of her disability and age.

10.	On July 19, 2004, plaintiff was present in a conference room with General Manager Harrati when her discrimination complaint was delivered to him.

11.	Upon reading the complaint, Harrati became irate and verbally abusive toward plaintiff, screaming at her that she would not "get away with filing a complaint against him." Harrati further advised plaintiff that she could not leave the conference room until he personally escorted her to her worksite and watch her every move.

12.     As a result of Harrati's conduct and her resulting fear that she was about to lose her job, plaintiff suffered a second anxiety attack and, was rendered unable to work beginning on July 20, 2004.

13.     When plaintiff was ultimately able to return to gainful employment she was emotionally unable to return to work for defendants.  Plaintiff's inability to return to work for defendants was the direct and proximate result of the aforementioned acts of discrimination, harassment and retaliation by Harrati and Francois.

14.     As a result of the foregoing, plaintiff was forced to accept employment at with another employer at a significantly lower rate of remuneration and significantly less valuable benefits of employment than she had enjoyed while employed by defendants.

Jurisdiction And Venue

15.     This action arises under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, et. seq.; Americans With Disabilities Act ("ADA"), 42 U.S.C. §12131, et. seq; New York State Human Rights Law, N.Y. Executive Law §296 et. seq., and the common law.  Consequently this court has jurisdiction over this action pursuant to 28 U.S.C. §1345; 42 U.S.C. §2000e-5(f)(3) and the principles of supplemental jurisdiction.

16.     Venue is proper in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events, acts and/or omissions giving rise to the claims herein occurred in this district.

17.     Plaintiff timely pursued an administrative remedy under the aforementioned statues prior to filing this action.  On or about July 12, 2004 plaintiff filed a Verified Complaint with the New York State Division of Human Rights and

authorized that agency to accept the Complaint as a filing under the ADEA and ADA. That Complaint was given Federal Charge No. 16GA402029 and SDHR Case No. 4608104. Plaintiff thereafter requested that the administrative agencies close their files and issue an Administrative Convenience Dismissal and Right to Sue Letter in connection with her claims. The EEOC issued a Notice Of Right To Sue Letter dated January 13, 2005 and the SDHR issued an Administrative Convenience Dismissal on January 31, 2005. Within 90 days thereafter, plaintiff commenced this action.

      18.     On or about August 4, 2004 plaintiff filed a Verified Complaint with the New York State Division of Human Rights alleging that she was the victim of retaliation for having filed the Verified Complaint alleging discrimination as set forth in paragraph 17 above. Plaintiff authorized that agency to accept the Complaint as a filing under the ADA. That Complaint was given Federal Charge No. 16GA410287 and SDHR Case No. 10100735. Plaintiff thereafter requested that the administrative agencies close their files and issue an Administrative Convenience Dismissal and Right to Sue Letter in connection with her claims. Although more than 180 days have passed since the filing of her retaliation complaint, the EEOC has yet to issue a Notice Of Right To Sue Letter on plaintiff's retaliation claim. It is anticipated that the EEOC will issue a Notice of Right to Sue Letter on plaintiff's retaliation claim in the near future and this action has been filed to preserve plaintiff's rights. The SDHR issued an Administrative Convenience Dismissal on plaintiff's retaliation claim on February 17, 2005. Within 90 days thereafter, plaintiff commenced this action.

Parties

19.     Plaintiff, Catherine Duhigg is a United States citizen, born on May 5, 1960, who, during the majority of the events complained of herein resided in New York County, New York.  Plaintiff suffers from diagnosed High Anxiety and Nervousness, a disability as that term is defined under the ADA and New York Human Rights Law.  From on or about July 10, 2000 until on or about July 20, 2004 plaintiff was employed by defendants as a Co-Director at several retail stores owned and operated by defendants at a number of different locations in New York, New York.

20.     Defendants own and operate retail stores throughout the United States, including several retail stores owned and operated in New York, New York.

Background

21.     From in or about July 10, 2000 until July 20, 2004, plaintiff was employed by defendants as a Co-Director of a number of different stores operated by defendants in Manhattan, and always performed her job in a satisfactory manner.

22.     Beginning in the summer of 2003, plaintiff began getting written warnings from her supervisor, Wilney Francois, female, age 27, which contained untrue allegations concerning plaintiff's work performance.  Francois' harassment of plaintiff culminated in Francois telling plaintiff that she should "resign from the company" and go back to her former employer, Daffy's Department Store.

23.     Defendants were aware that plaintiff suffers from a psychiatric conditions known as "high anxiety and nervousness" which are considered disabilities under the New York Human Rights Law.

24. Francois, being aware of plaintiff's disabling conditions, engaged in a course of conduct that was designed to cause plaintiff to suffer an anxiety attack and to render her unable to work.

25. Plaintiff in fact suffered an anxiety attack as a result of Francois' hostile conduct towards her.

26. In or about April, 2004, as a result of plaintiff's complaints to defendants, plaintiff was transferred from their Herald Square store to their store located at 32 East 57th Street.

27. During the period she worked at the 57th Street store, all of plaintiff's supervisory responsibilities were taken away from her.

28. On or about June 29, 2004, plaintiff was informed by defendants' General Manager David Harrati, that she would be terminated effective July 31, 2004 unless she resigned.

29. As a result of the foregoing acts of discrimination, plaintiff filed a complaint with the New York State Division of Human Rights and charge with the federal Equal Employment Opportunity Commission alleging that she was the victim of unlawful discrimination on the basis of her disability and age.

30. On July 19, 2004, plaintiff was present in a conference room with General Manager Harrati when her discrimination complaint was delivered to him.

31. Upon reading the complaint, Harrati became irate and verbally abusive toward plaintiff, screaming at her that she would not "get away with filing a complaint against him." Harrati further advised plaintiff that she could not leave the conference room until he personally escorted her to her worksite and watch her every move.

32. As a result of Harrati's conduct and her resulting fear that she was about to lose her job, plaintiff suffered a second anxiety attack and, was rendered unable to work beginning on July 20, 2004.

33. When plaintiff was ultimately able to return to gainful employment she was emotionally unable to return to work for defendants. Plaintiff's inability to return to work for defendants was the direct and proximate result of the aforementioned acts of discrimination, harassment and retaliation by Harrati and Francois.

34. As a result of the foregoing, plaintiff was forced to accept employment at with another employer at a significantly lower rate of remuneration and significantly less valuable benefits of employment than she had enjoyed while employed by defendants.

**FIRST CAUSE OF ACTION (DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT)**

35. Plaintiff suffers from a disability as that term is defined in the ADA. Defendants intentionally, recklessly, with malice and without regard to the law unlawfully discriminated against plaintiff on the basis of her disability in violation of the ADA by creating a hostile work environment, failing to remedy the problem when plaintiff complained about it, failing to provide an adequate means of complaint and redress for complaints of unlawful harassment and retaliating against plaintiff when she opted to no longer tolerate the offensive and hostile conditions in which she had been forced to work.

36. As a result of defendants' conduct, and that of it's officers, managers, supervisors and other agents, plaintiff was constructively discharged effective July 20, 2004, and is entitled to compensatory damages in an amount to be determined at trial but believed to be in excess of $100,000; back pay and front pay, including lost wages,

bonuses, salary increases, commissions and such other compensation, benefits and entitlements which plaintiff would have received from the date of her discharge to the date of judgment, and punitive damages, together with such further relief as is just and proper.

### SECOND CAUSE OF ACTION (DISABILITY DISCRIMINATION IN VIOLATION OF THE NEW YORK HUMAN RIGHTS LAW)

37.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 36.

38.     Defendants unlawfully discriminated against plaintiff on the basis of her disability in violation of the New York Human Rights Law, New York Executive Law §296 by engaging in behavior which created a hostile work environment, including failing to remedy the problem when plaintiff complained about it, failing to provide an adequate means of complaint and redress for complaints of harassment and retaliating against plaintiff when she opted to no longer tolerate the offensive and hostile conditions in which she had been forced to work.

39.     Non-disabled employees of defendants were not forced to endure such hostile environment and were not subjected to the patently offensive behavior engaged in by Harrati and Francios towards plaintiff.

40.     As a result, plaintiff is entitled to compensatory damages in an amount to be determined at trial but believed to be in excess of $100,000; back pay and front pay, including lost wages, bonuses, salary increases, commissions and such other compensation, benefits and entitlements which plaintiff would have received from the date of her discharge to the date of judgment, together with such further relief as is just and proper.

## THIRD CAUSE OF ACTION (AGE DISCRIMINATION IN VIOLATION OF THE ADEA AND THE NEW YORK HUMAN RIGHTS LAW)

41. Plaintiff repeats and realleges paragraphs 1 through 40.

42. Plaintiff, at age 44, was the oldest person employed in each of defendants' stores to which she was assigned.

43. On information and belief, following plaintiff's constructive discharge she was replaced by a younger person.

44. Defendants intentionally, recklessly, with malice and without regard to the law unlawfully discriminated against plaintiff on the basis of her age in violation of the ADEA by creating a hostile work environment, failing to remedy the problem when plaintiff complained about it, failing to provide an adequate means of complaint and redress for complaints of unlawful harassment and retaliating against plaintiff when she opted to no longer tolerate the offensive and hostile conditions in which she had been forced to work.

45. Defendants' hostile treatment and constructive discharge of plaintiff was motivated by unlawful age discrimination in violation of the ADEA and New York Human Rights Law..

WHEREFORE, plaintiff demands judgment as follows:

1. On the First Cause of Action awarding plaintiff compensatory damages in an amount to be determined at trial but believed to be in excess of $100,000; back pay and front pay including lost wages, bonuses, salary increases, commissions and such other compensation and benefits which plaintiff would have received from the date of her discharge to the date of judgment, punitive damages, the costs of bringing this action, including reasonable attorney's fees and such further relief as is just and proper.

9

2. On the Second Cause of Action awarding plaintiff compensatory damages in an amount to be determined at trial but believed to be in excess of $100,000; back pay and front pay including lost wages, bonuses, salary increases, commissions and such other compensation and benefits which plaintiff would have received from the date of her discharge to the date of judgment, the costs of bringing this action, including reasonable attorney's fees and such further relief as is just and proper.

3. On the Third Cause of Action awarding plaintiff compensatory damages in an amount to be determined at trial but believed to be in excess of $100,000; back pay and front pay including lost wages, bonuses, salary increases, commissions and such other compensation and benefits which plaintiff would have received from the date of her discharge to the date of judgment, punitive damages, the costs of bringing this action, including reasonable attorney's fees and such further relief as is just and proper.

### **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues which may be so tried.

Dated: New York, New York
April 8, 2005

                                    LAW OFFICES OF HARRY WEINBERG

                                    By: _____
                                          HARRY WEINBERG, ESQ.
                                          (HW0574)
                                          Attorney for Plaintiff
                                          11 Beach Street
                                          New York, N.Y.  10013
                                          (212) 989-2908